**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| LAUREL HILBERT,<br>2039 New Hampshire Avenue, N.W.<br>Washington, D.C. 20009<br><br>*Plaintiff*,<br><br>v.<br><br>UBER TECHNOLOGIES, INC.<br>1515 3rd Street<br>San Francisco, CA 94158<br><br>RASIER, LLC<br>1515 3rd Street<br>San Francisco, CA 94158<br><br>DRINNEN, LLC<br>1515 3rd Street<br>San Francisco, CA 94158<br><br>SERVE (AS TO ALL):<br><br>CT CORPORATION SYSTEM, Registered Agent<br>1015 15th Street NW<br>Suite 1000<br>Washington, DC 20005<br><br>*Defendants*. | Case No.<br><br><br><br><br><br>**Class Action Complaint**<br><br>**Jury Trial Demand** |

**COMPLAINT**

**INTRODUCTION**

1. Plaintiff, Mr. Laurel Hilbert asserts the following claims against Defendants UBER TECHNOLOGIES, INC., RASIER, LLC, and DRINNEN, LLC (collectively, "Uber" or "Defendant") as follows:

1

2.  The revolutionary and disruptive new industry known as "ride-sharing" has provided new freedom of travel for many people in Washington, D.C. and elsewhere. It permits them to use their smartphones to secure rides more swiftly, reliably, and conveniently – and then ride more cheaply – than was possible with taxi service alone. However, users who are dependent on service animals have been denied these benefits because Defendants Uber Technologies Inc., Rasier LLC, and Drinnen LLC (collectively "Uber") have chosen not to adequately train their employed drivers on how to facilitate such users in Uber's growing fleet.

3.  Plaintiff Laurel Hilbert brings this action against Defendants under Title III of the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq*. ("ADA"), and the District of Columbia Human Rights Act, D.C. Code § 2-1401.0 *et seq*., for denying users who are dependent on service animals full and equal enjoyment of Defendants' transportation service.

4.  Uber is at the forefront of a watershed change in transportation services, providing a highly convenient service to millions of riders: the ability to arrange cheap, door-to-door transportation with just a few minutes' notice. Uber's ride-hailing service generates billions of dollars in revenue annually.

5.  Uber has operated in the District of Columbia metropolitan area since 2011 and has rapidly expanded its base of users and drivers in the area. Uber represents that at any time of day, a person in any neighborhood in the D.C. area can use Uber's smartphone application to connect with a vehicle in Uber's fleet. That vehicle generally will arrive quickly and will take the person to any other location in the metropolitan area at a pre-determined price that is typically cheaper than the same ride taken with traditional taxicab or limousine services.

6. Were Uber to provide similar service to service animal users, Uber's transportation services could have life-changing effects for such users, improving their ability to work, study, participate in community life, and generally to live more independently.

7. Uber has prescribed and implemented a Service Animal and Assistive Device Policy, last modified on October 31, 2022.[1]  This policy, on its surface, effectively ensures that service animal users are not impeded in any way from full transportation service and amenities from Uber drivers.  However, Uber does not properly train its employed drivers to uphold this policy and refuses to do so.

8. Consequently, service animal users like Mr. Hilbert do not benefit from Uber's Service Animal and Assistive Device Policy because many drivers behave in flagrant disregard of it.

9. Based on a 2018 report, over forty (40) million people in the United States were documented with a disability, including over seven and a half (7.5) million individuals who have a visual disability.[2]  According to the National Federation of the Blind's 2016 report (updated in 2019), approximately 16,400 visually impaired persons lived in the District of Columbia.[3] As a result of this, the probability that such persons may seek Uber's services within the District of Columbia is high.

---

[1] https://www.uber.com/legal/en/document/?name=service-animal-policy&country=united-states&lang=en.

[2] Lee W. Erickson & S. von Schrader, *2018 Disability Status Report: United States*, CORNELL UNIVERSITY 10 (2020), https://www.disabilitystatistics.org/StatusReports/2018-PDF/2018-StatusReport_US.pdf (last visited November 23, 2022).  The report uses data from the 2018 American Community Survey.

[3] Blindness Statistics, National Federation of the Blind (updated January 2019) https://nfb.org/resources/blindness-statistics (last visited November 18, 2023).

10. Plaintiff brings this civil rights action against Defendant for its failure to properly impress upon its employed Drivers (hereinafter "Drivers") the significance and critical aspects of their Service Animal and Assistive Device Policy (hereinafter "Policy), and to properly train them on how to implement the Policy.

11. Plaintiff uses the terms "blind" or "visually impaired" interchangeably to refer to all people with visual impairments who meet the legal definition of blindness in that they have a visual acuity with correction of less than or equal to 20 x 200.

12. Uber has the ability to make its D.C. fleet accessible to wheelchair users but it chooses not to do so.  Uber exercises considerable control over the vehicles used by its drivers, including by mandating the approved models and other specifications of Uber vehicles, and by helping drivers acquire inaccessible, Uber-approved vehicles in a variety of ways, including specialized leasing and rental programs. It also provides financial incentives for drivers to meet customer in a variety of ways, with respect to the cars they acquire, the hours they work, the areas where they drive, and more.

13. Rather than try to do the same to properly train its employed Drivers and properly implement the Policy, Defendant recalcitrantly maintains that its Drivers are not its employees.  Defendant therefore contends that there is no fiduciary duty upon it to train its employed Drivers in this way.

14. In addition, Defendant's violation of the ADA and the DCHRA subjects it to liability under the D.C. Consumer Protection Procedures Act, D.C. Code §§ 28-3901, *et. seq.*  In particular, Defendant's practices, including but not limited to representing that its services are ADA-compliant and accessible, are non-compliant and inaccessible to blind and visually impaired persons, and anyone using service animals. D.C. Code § 28-3904(a), (b), (d), (h).

15. Mr. Hilbert brings this lawsuit to remedy these ongoing injuries to himself and others who similarly use service animals. Among other things, Mr. Hilbert seeks an injunction that would require the Defendant to properly train its employed Drivers on the significance of the Policy and to implement the Policy with efficacy, as well as monetary and other equitable relief.

## PARTIES

16. Plaintiff Laurel Hilbert ("Plaintiff" or "Mr. Hilbert") resides in Washington, D.C.

17. Plaintiff is a blind, visually-impaired handicapped person and a member of a protected class of individuals under the Americans with Disabilities Act ("ADA"), pursuant to 42 U.S.C. §§ 12102(1)-(2), and the regulations implementing the ADA set forth at 28 C.F.R § 36.101 *et seq.*, and the D.C. Human Rights Act ("DCHRA"), D.C. Code § 2-1401 *et seq*.

18. Because he is visually impaired, he is a frequent consumer of ride-share services and it is inevitable that Uber's discriminatory denial of services, as well as its failure to train its Drivers on the use of service animals by consumers, will injure him again if these discriminatory actions are not remediated in accordance with the Americans with Disabilities Act and DCHRA requirements.

19. Defendant UBER TECHNOLOGIES, INC. is and was at all relevant times incorporated in Delaware and headquartered in California. It does business in the District of Columbia. Its ride-share services are offered to the general public and constitute a public accommodation within the definition of the ADA, 42 U.S.C. § 12181(7) and the D.C. Human Rights Act ("DCHRA"), D.C. Code § 2-1401 *et seq*., and a "good or service" within the meaning of the DC Consumer Protection Procedures Act, D.C. Code §§ 28-3901, *et. seq*.

20. Defendant Rasier, LLC, is a subsidiary of Uber Technologies. It is a Delaware corporation with headquarters in California. It holds many of the licenses required for Uber's operations. In particular, Rasier is a licensed, private sedan business in the District of Columbia.

21. Defendant Drinnen, LLC, is a subsidiary of Uber Technologies. It is a Delaware corporation with headquarters in California. It holds a permit to operate as a digital dispatch company in the District of Columbia.

## JURISDICTION AND VENUE

22. This Court has subject-matter jurisdiction over this action under 28 U.S.C § 1331 and 42 U.S.C. § 12181 as Plaintiff's claims arise under Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12181, *et seq.* and 28 U.S.C. § 1332.

23. This Court has supplemental jurisdiction under 28 U.S.C. § 1367 over Plaintiff's claims under the D.C. Human Rights Act ("DCHRA"), D.C. Code § 2-1401 *et seq*. and the D.C. Consumer Protection Procedures Act, D.C. Code § 28-3901 *et seq*. ("CPPA").

24. Venue is proper in this District under 28 U.S.C. § 1391(b)(1) and (2) because Defendant conducts and continues to conduct a substantial and significant amount of business in the District of Columbia.

25. Defendant is subject to personal jurisdiction in this District. Defendant has been and is committing the acts or omissions alleged herein in this District that have caused some of the injuries and violated the rights of Plaintiff and to other customers who use service animals in this District under the ADA, the DCHRA, and the CPPA. A substantial part of the acts and omissions giving rise to Plaintiff's claims occurred in this District.

26. In particular, Plaintiff has on many occasions been denied the full use and enjoyment of Uber's services and amenities offered to the general public, including on one occasion almost being physically harmed. Plaintiff lost many opportunities to use Uber services and amenities due to the discriminatory roadblocks faced as a result of Defendant's failure to properly train its Drivers to implement the Policy.

27. Further, these access barriers that Plaintiff encountered have caused a denial of Plaintiff's full and equal access multiple times in the past, and now deters Plaintiff on a regular basis from accessing the Uber in the future, which is antithetical to the freedoms promised to the visually impaired by the passage of federal and state disability civil rights legislation.

28. This Court is empowered to issue a declaratory judgment under 28 U.S.C. §§ 2201 and 2202.

## FACTUAL BACKGROUND

29. Mr. Hilbert has regularly requested Drivers through Uber.

30. On multiple occasions, Drivers have pulled up to the pick-up location and, upon seeing Mr. Hilbert and/or his service animal, refused to provide services to Mr. Hilbert, either by overtly refusing to allow him to enter their cars, locking the doors, or simply driving away. On one occasion, the Driver of the Uber pulled away abruptly while Mr. Hilbert had his hand on the handle of the door, causing the car to drag Mr. Hilbert some distance before he fell and suffered injuries.

31. On other occasions, when Mr. Hilbert has noted through Uber's messaging application that he is visually-impaired and travels with the assistance of a service dog, Drivers for Uber have canceled previously scheduled trips.

32. On a number of occasions, Drivers for Uber have refused to drive Mr. Hilbert even after he has *explained* that his dog is a service dog whose presence is necessary to assist Mr. Hilbert because he is visually impaired.

33. Mr. Hilbert has reported refusals by Uber Drivers to serve him (and his service dog) to the company's "safety line" on a number of occasions without any effective response.

34. Unlike other ride share services, Uber does not maintain a dedicated phone number or service where disabled consumers can report failures by Drivers to serve consumers who require the assistance of service animals.

## FIRST CAUSE OF ACTION
## Violation of the Americans with Disabilities Act
## (42 U.S.C. § 12181 et seq.)

35. Plaintiff, on behalf of himself and other visually impaired persons, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

36. Section 302(a) of Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, et seq., provides:

    No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation.

    42 U.S.C. § 12182(a).

37. Defendant's ride-share service is a place of public accommodation within the definition of Title III of the ADA, 42 U.S.C. § 12181(7).

38. The ride-share service is a service offered to the general public and, as such, must be equally accessible to all potential consumers.

39. Under Section 302(b)(1) of Title III of the ADA, it is unlawful discrimination to deny individuals with disabilities an opportunity to participate in or benefit from the products, services, facilities, privileges, advantages, or accommodations of an entity, which is equal to the opportunities afforded to other individuals. 42 U.S.C. § 12182(b)(1)(A)(ii).

40. Under Section 302(b)(2) of Title III of the ADA, unlawful discrimination also includes, among other things:

> [A] failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages or accommodations; and a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden.

42 U.S.C. §§ 12182(b)(2)(A)(ii) – (iii).

41. The acts alleged herein constitute violations of Title III of the ADA, and the regulations promulgated thereunder.

42. Plaintiff, who is a member of a protected class of persons under the ADA, has a physical disability that substantially limits the major life activity of sight within the meaning of 42 U.S.C. §§ 12102(1)(A) – (2)(A).

43. Furthermore, Plaintiff has been denied full and equal access to the service offered by Defendant, has not been provided services that are provided to other patrons who are not disabled, and has been provided services that are inferior to the services provided to non-

disabled persons. Defendant has failed to take any prompt and equitable steps to remedy its discriminatory conduct. These violations are ongoing.

44. Under 42 U.S.C. § 12188 and the remedies, procedures, and rights set forth and incorporated therein, Plaintiff requests relief as set forth below.

## SECOND CAUSE OF ACTION
## Violation of the DC Human Rights Act
### (D.C. Code §§ 2-1401, et seq.)

45. Plaintiff repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

46. The DCHRA makes it "… an unlawful discriminatory practice to do any of the following acts, wholly or partially for a discriminatory reason based on the actual or perceived: … disability… of any individual: (1) To deny, directly or indirectly, any person the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of any place of public accommodations." D.C. Code § 1-1402.31(a)(1). Defendant is systematically violating the DCHRA.

47. In addition, "Any practice which has the effect or consequence of violating any of the provisions of this chapter shall be deemed to be an unlawful discriminatory practice." D.C. Code § 1-1402.68.

48. Defendant is a "place of public accommodation" within the meaning of the DCHRA because it is a "… person or place that provides, to a person in the District, access to an accommodation, service, or good, whether or not that person or place maintains a physical location in the District or charges for those goods or services, such as inns, taverns, road houses, hotels, motels, whether conducted for the entertainment of transient guests or for the accommodation of those seeking health, recreation or rest," which includes its physical

10

facility and its goods and services offered to consumers in the District of Columbia through its ride-sharing service.

49. Defendant's ride-share service is a service provided by Defendant that is inaccessible to patrons like Mr. Hilbert who are visually impaired. This inaccessibility has denied those visually impaired full and equal access to the facilities and services Defendant makes available to the non-disabled public. Defendant has violated the DCHRA by denying visually impaired customers the services and products it provides. These violations are ongoing.

50. Defendant's actions constitute disability discrimination against Plaintiff in violation of the DCHRA because Defendant's service is inaccessible to Plaintiff, Defendant knowingly maintains its service in this inaccessible form, and has failed to take adequate actions to correct these discriminatory barriers even after being notified of the effects of that discrimination.

51. Defendant's actions also constitute a discriminatory practice against Plaintiff on the basis of disability in violation of the DCHRA because the ride-sharing service "… has the effect or consequence of violating any of the provisions of this chapter…." D.C. Code § 1-1402.68.

52. Defendant is also violating the DCHRA because the conduct alleged herein likewise constitutes a violation of the various provisions under the ADA, 42 U.S.C. § 12101 et seq. Courts look to case law interpreting the Americans with Disabilities Act ("ADA") in construing comparable provisions of the DCHRA where no controlling precedent from the D.C. Court of Appeals exists. *Grant v. May Dep't Stores Co.*, 786 A.2d 580, 583-84 (D.C. 2001).

53. Defendant's actions were and are in violation of the DCHRA and, therefore, Plaintiff and others similarly situated are entitled to injunctive relief remedying the discrimination.

54. Plaintiff is also entitled to a preliminary and permanent injunction enjoining Defendant from violating the DCHRA and requiring Defendant to take the steps necessary to make its ride-share service readily accessible to and usable by visually impaired individuals.

55. Defendant's denial of accessible services and its discrimination against Plaintiff renders it liable for each and every offense for the actual and special damages in an amount to be determined by a jury, and reasonable attorney's fees and costs that may be determined by the Court. D.C. Code § 2-1403.16.

### THIRD CAUSE OF ACTION
### Violation of the DC Consumer Protection Procedures Act
### (D.C. Code §§ 28-3901, *et seq.*)

56. Plaintiff realleges and incorporates by reference the prior paragraphs as if fully set forth herein.

57. The D.C. Consumer Protection Procedures Act ("CPPA") is "construed and applied liberally" to protect a consumer's "right to truthful information about consumer goods and services" purchased or received in the District of Colubmia. *Frankeny v. Dist. Hosp. Partners, LP*, 225 A.3d 999, 1004 (D.C. 2020) (*citing* D.C. Code § 28-3901(c); *see also* D.C. Code § 28-3905(k)(1)(A) (providing private right of action)).

58. Any person, whether acting for their self-interests or the general public, may bring an action under the CPPA to seek relief by any person of an unfair and/or unlawful trade practice in violation of D.C. law. D.C. Code § 28-3905 (k)(1) (2009).

59. While the CPPA enumerates a number of specific unlawful trade practices, the enumeration is not exclusive. *Dist. Cablevision Ltd. P'shp v. Bassin*, 828 A.2d 714, 723 (D.C. 2003).

60. Trade practices that violate other laws, including the common law, also fall within the purview of the CPPA. The CPPA's extensive enforcement mechanisms apply not only to the unlawful trade practices proscribed by D.C. Code § 28-3904, but to all other statutory and common law prohibitions. *Id.*; *Osbourne v. Captial City Mortg. Corp.*, 727 A.2d 322, 325-26 (D.C. 1999). Prohibitions under the DCHRA, including disability discrimination are included prohibitions.

61. CPPA violations occur when a person makes a representation that goods or services have characteristics or qualities that they do not have, D.C. Code § 28-3904(a); makes a representation that the person has a status that the person does not have, D.C. Code § 28-3904(b); makes a representation that goods or services are of particular standard or quality, if in fact they are of another, D.C. Code § 28-3904(d); and/or advertising services without the intent to sell them as advertised or offered, D.C. Code § 28-3904(h).

62. The consumer also "need not prove that she was 'misled, deceived, or damaged' by a merchant's actions[,]" D.C. Code § 28-3904, nor "always prove that the merchant made an intentional misrepresentation under the CPPA." *Frankeny*, 225 A.3d at 1004.

63. Under the CPPA, Plaintiff is a consumer of Defendant, a ride-share service.

64. In addition, a reasonable person would find that Defendant's representation of accessibility to disabled consumers was a fact, when, in reality, it was not accessible to blind and visually impaired persons.

65. The CPPA "affords a panoply of strong remedies, including treble damages, punitive damages, and attorneys' fees, to consumers who are victimized by unlawful trade practices." *Frankeny*, 225 A.3d at 1004 (*Ford v. Chartone, Inc.* 908 A.2d 72, 81 (D.C. 2006) (citation and internal quotation marks omitted).

66. In addition to the direct damages suffered by Plaintiff for being denied promised services by Defendant as specified above, he seeks as damages in this action up to treble damages and attorneys' fees as a consumer for Defendant's unlawful trade practices.

67. Corporate officers are personally liable when they participate in, inspire, or fail to prevent unlawful trade practices under the CPPA. *Cooper v. First Gov. Mortg. & Investors Corp.*, 206 F. Supp. 2d 33, 36 (D.D.C. 2002); *Lawlor v. District of Columbia*, 758 A.2d 964, 974 (D.C. 2000).

68. Individual liability under the CPPA is appropriate where a corporate officer participates directly in the deceptive practices or had authority to control those practices, and had or should have had knowledge of those practices. *POM Wonderful, LLC v. FTC*, 777 F.3d 478, 498 (D.C. Cir. 2015).

69. Defendant is liable for all damages suffered by Plaintiff under the CPPA, justifying an award of actual damages, up to treble damages, and attorneys' fees and litigation costs, in an amount to be proven at trial.

## FOURTH CAUSE OF ACTION
### Declaratory Relief

70. Plaintiff, on behalf of himself and other visually impaired persons, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

71. An actual controversy has arisen and now exists between the parties in that Plaintiff contends and is informed and believes that Defendant denies that it does not provide blind and/or visually impaired customers the full and equal access to its services and facilities, and/or fails to comply with applicable laws, including but not limited to Title III of the

Americans with Disabilities Act and the DCHRA, prohibiting discrimination against the blind and visually impaired.

72. A judicial declaration is necessary and appropriate at this time in order that each of the parties may know their respective rights and duties and act accordingly.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests this Court grant the following relief:

A. For a judgment that Defendant violated Plaintiff's rights under the ADA, the DCHRA, and the CPPA;

B. A declaration that Defendant owns, maintains, and/or operates its ride-sharing service in a manner that discriminates against the blind and visually impaired persons, and which fails to provide access for persons with disabilities as required by the ADA and the DCHRA.

C. A preliminary and permanent injunction prohibiting Defendant from violating the ADA and the DCHRA;

D. A preliminary and permanent injunction requiring Defendant to take all steps necessary to make its ride-sharing service fully compliant with the requirements set forth in the ADA and its implementing regulations, so that the service is regularly accessible to and usable by blind and visually impaired individuals;

E. Economic and/or compensatory damages under the ADAD, DCHRA, and up to treble damages under the CPPA, as applicable, in an amount to be determined at trial;

F. Pre- and post-judgment interest;

G. An award of costs and expenses of this action together with reasonable attorneys' and expert fees; and

H. Such other and further relief as this Court deems just and proper.

## JURY TRIAL DEMAND

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff demands a trial by jury on all questions of fact raised by the Complaint.

Dated: Thursday, February 29, 2024                    Respectfully submitted,

                                              **ERIC SIEGEL LAW, PLLC**

                                              By   /s/ Eric L. Siegel
                                              Eric L. Siegel (Bar No. 427350)
                                              esiegel@ericsiegellaw.com
                                              888 17th Street, N.W., Suite 1200
                                              Washington, D.C. 20006
                                              (202) 946-2962 (Main)
                                              (771) 220-6116 (Direct)
                                              (202) 223-6625 (Facsimile)

                                              *Attorney for Plaintiff Laurel Hilbert*