**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

Laurel Hilbert,

       *Plaintiff,*

   v.

Uber Technologies, Inc., *et al.*,

       *Defendants.*

No. 1:24-cv-00584-RBW

<u>**DEFENDANTS' MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS**</u>

    Pursuant to 9 U.S.C. §§ 3 and 4, the defendants, Uber Technologies, Inc., Rasier, LLC, and Drinnen, LLC (collectively, "Uber") hereby move the Court for an order (i) compelling the plaintiff, Laurel Hilbert, to pursue his claims in arbitration pursuant to the terms of the contract between the parties; and (ii) staying this action until the arbitration has concluded.

    As explained in the accompanying Memorandum of Points and Authorities and papers filed in support, the plaintiff must arbitrate his claims because he and Uber entered into a contract that includes a broad agreement to arbitrate all disputes. The parties' contract is a valid agreement, and it clearly and unmistakably delegates questions of arbitrability to the arbitrator. Accordingly, the plaintiff's claim must be resolved in arbitration, rather than in court.

    Pursuant to Local Civil Rule 7(m), counsel for the defendants has conferred with counsel for the plaintiff to discuss whether there is any opposition to the relief sought and, if there is, to narrow the areas of disagreement. Counsel for the plaintiff represented that the plaintiff intends to oppose the motion.

Respectfully submitted,

**MORGAN, LEWIS & BOCKIUS LLP**

Dated:  July 15, 2024          *s/ Stephanie Schuster*

Stephanie Schuster (Bar No. 1011924)
Patrick A. Harvey (Bar No. 995570)
1111 Pennsylvania Avenue, NW
Washington, DC  20004
Telephone: 202.739.3000
stephanie.schuster@morganlewis.com
patrick.harvey@morganlewis.com

*Attorneys for Defendants*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

Laurel Hilbert,

       *Plaintiff*,

    v.

Uber Technologies, Inc., *et al.*,

       *Defendants*.

No. 1:24-cv-00584-RBW

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANTS' MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS**

# <u>TABLE OF CONTENTS</u>

**Page**

INTRODUCTION ................................................................................................................. 1

BACKGROUND ................................................................................................................. 1

    I.    THE PLAINTIFF AFFIRMATIVELY ASSENTED TO UBER'S TERMS OF USE. ....................................................................................................... 1

    II.    THE PLAINTIFF AGREED TO ARBITRATE ALL DISPUTES WITH UBER. ........................................................................................................... 4

    III.    DESPITE HIS REPEATED AGREEMENT TO ARBITRATE, THE PLAINTIFF SUED UBER IN THIS COURT. ...................................................... 5

ARGUMENT ..................................................................................................................... 5

    I.    A VALID ARBITRATION AGREEMENT BETWEEN THE PARTIES EXISTS. ....................................................................................................... 7

    II.    THE PARTIES CLEARLY AND UNMISTAKABLY DELEGATED ARBITRABILITY QUESTIONS TO THE ARBITRATOR. .............................. 8

CONCLUSION ................................................................................................................... 9

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Am. Exp. Co. v. Italian Colors Rest.*,
    570 U.S. 228 (2013)................................................................................6

*Apprio, Inc. v. Zaccari*,
    104 F.4th 897 (D.C. Cir. 2024)...........................................................7

*AT&T Mobility, LLC v. Concepcion*,
    563 U.S. 333 (2011)................................................................................6

*Commc'ns Workers of Am. v. AT&T Inc.*,
    6 F.4th 1344 (D.C. Cir. 2021)..........................................................6, 9

*Crawford v. Beachbody, LLC*,
    2014 WL 6606563 (S.D. Cal. 2014)...................................................8

*Dean Witter Reynolds, Inc. v. Byrd*,
    470 U.S. 213 (1985)................................................................................6

*Eastbanc, Inc. v. Georgetown Park Assocs. II*,
    940 A.2d 996 (D.C. 2008) ....................................................................7

*First Options, Inc. v. Kaplan*,
    514 U.S. 938 (1995)................................................................................7

*Forrest v. Verizon Commc'ns*,
    805 A.2d 1007 (D.C. 2002) ..................................................................7

*Fteja v. Facebook, Inc.*,
    841 F. Supp. 2d 829 (S.D.N.Y. 2012)................................................8

*Gambo v. Lyft*,
    642 F. Supp. 3d 46 (D.D.C. 2022) ......................................................7

*Hancock v. AT&T Co.*,
    701 F.3d 1248 (10th Cir. 2012) ...........................................................7

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
    586 U.S. 63 (2019)..............................................................................6, 9

*Kindred Nursing Ctrs. v. Clark*,
    581 U.S. 246 (2017)................................................................................6

*Meyer v. Uber Techs., Inc.*,
  868 F.3d 66 (2d Cir. 2017)............................................................................................7

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*,
  473 U.S. 614 (1985)......................................................................................................6

*Oberstein v. Live Nation Entm't, Inc.*,
  60 F.4th 505 (9th Cir. 2023).........................................................................................7

*Osvatics v. Lyft, Inc.*,
  535 F. Supp. 3d. 1 (D.D.C. 2021).................................................................................7

*Rent-A-Center, Inc. v. Jackson*,
  561 U.S. 63 (2010)....................................................................................................6, 9

*Selden v. Airbnb, Inc.*,
  4 F.4th 148 (D.C. Cir. 2021).....................................................................................7, 8

*Smith v. Spizzirri*,
  601 U.S. 472 (2024)......................................................................................................6

## Statutes

9 U.S.C. § 2..............................................................................................................4, 5

9 U.S.C. § 3.................................................................................................................6

9 U.S.C. § 5.................................................................................................................5

## INTRODUCTION

The plaintiff claims Uber Technologies, Inc., Rasier, LLC, and Drinnen, LLC (collectively, "Uber") have violated the Americans with Disabilities Act and D.C. law because, notwithstanding Uber's policies prohibiting drivers from refusing to provide rides to riders with service animals, some independent, third-party drivers allegedly refused to provide him rides because of his service animal. These claims are meritless. But at the threshold, the plaintiff has filed in the wrong forum: his claims belong in arbitration, not this Court.

Use of the popular Uber ridesharing platform is subject to terms and conditions. On at least three occasions, the plaintiff affirmatively assented to and confirmed his intention to be bound by those terms and conditions, including a broad agreement to arbitrate all disputes relating to his access to and use of Uber's services on an individual basis. He also agreed to delegate all disputes about the enforceability of the parties' contract or the arbitrability of any particular dispute to the arbitrator. Instead, the plaintiff ignored this contractual commitment and sued Uber in this Court on behalf of a putative, nationwide class. Because the parties have a valid agreement to arbitrate substantive disputes and disputes about enforceability and arbitrability, the Court should enter an order compelling arbitration and staying all proceedings pending the arbitration.

## BACKGROUND

## I.    THE PLAINTIFF AFFIRMATIVELY ASSENTED TO UBER'S TERMS OF USE.

Uber develops a well-known pair of software applications for peer-to-peer ridesharing. Declaration of Chiarra Davis ("Davis Decl.") ¶ 3. One application is the Uber Rider App, which allows persons looking for a ride ("Riders") to request rides from individuals or entities using the other application, the Uber Driver App, who are online, nearby, and looking to sell rides to Riders and receive their ride requests ("Drivers"). *Id.* The plaintiff, Laurel Hilbert, is a "frequent consumer of ride-share services." ECF No. 3 ("Am. Compl.") ¶ 33. He signed up to use the Uber

ridesharing marketplace as a Rider on November 27, 2018, and continued to use it to request rides for at least five years.  Davis Decl. ¶¶ 6, 16.

Use of the Uber Rider App is subject to terms and conditions that Riders must agree to when they create an Uber Rider account, and which may be revised from time to time.  *Id.* ¶ 4; *see id.* ¶¶ 9–10.  When the plaintiff first created a rider account in November 2018, he agreed to terms and conditions that went into effect on December 13, 2017 (the "2017 Terms").  *Id.* ¶ 8; *see* Ex. A.[1] The plaintiff later agreed to revised terms and conditions, including (i) the version that went into effect on August 16, 2022 (the "2022 Terms"), to which he affirmatively assented on November 30, 2022; and (ii) the version that went into effect on January 17, 2023 (the "2023 Terms"), to which he affirmatively assented on January 30, 2023.  *Id.* ¶¶ 11–15; Exs. B, E.

The plaintiff assented to the 2022 Terms and the 2023 Terms in the same way.  When he opened the Uber Rider App on November 30, 2022, Plaintiff was presented with a pop-up screen titled "We've updated our terms."  Davis Decl. ¶¶ 11–12; Ex. C.  The screen stated in large black text offset against a white background: "We encourage you to read our updated Terms in full." Davis Decl. ¶ 12.  Directly beneath that message were the phrases "Terms of Use" and "Privacy Notice," which were displayed in bright blue, underlined text to denote a hyperlink, and each phrase, if clicked, took the user to the revised terms and conditions and privacy policy, respectively.  *Id.*  The screen appeared as follows:

---

[1]    The exhibits cited in this brief are the exhibits appended to the Davis Declaration.



Ex. C.

Riders—including the plaintiff—could not proceed past this screen and use the Uber Rider App to request rides without clicking the "Confirm" button at bottom of the screen, and they could not click the "Confirm" button unless they clicked the check box next to the following phrase: "**By checking the box, I have reviewed and agree to the Terms of Use and acknowledge the Privacy Notice.**" *Id.* Uber's records show that the plaintiff checked the check box and then clicked "Continue." *Id.* ¶ 13; Ex. D.

The plaintiff was presented with the same screen when he opened the Uber Rider App on January 30, 2023. Davis Decl. ¶ 15. On this occasion, too, Riders could not proceed past the screen without checking the check box and clicking "Confirm." *Id.* Uber's records show that the plaintiff checked the check box and clicked "Continue" on that date too. *Id.*; Ex. D.

II.    **THE PLAINTIFF AGREED TO ARBITRATE ALL DISPUTES WITH UBER.**

The 2017 Terms, the 2022 Terms, and the 2023 Terms all include provisions in which the plaintiff and Uber agreed to submit all disputes between them to binding, individual arbitration. Ex. A § 2; Ex. B § 2; Ex. E § 2.  The parties to the 2023 Terms—the version the plaintiff last assented to before commencing this lawsuit—are the plaintiff and "Uber Technologies, Inc. and its subsidiaries, representatives, affiliates, officers, and directors."  Ex. E at p. 1.  On the first page, the 2023 Terms flag that an arbitration agreement is included in Section 2.  *Id.* ("**IMPORTANT: PLEASE BE ADVISED THAT THESE TERMS OF SERVICE CONTAIN PROVISIONS THAT GOVERN HOW YOU CAN BRING CLAIMS BETWEEN YOU AND UBER, INCLUDING THE ARBITRATION AGREEMENT IN SECTION 2 BELOW.**") (emphases in original).

In Section 2 of the 2023 Terms, titled "**Arbitration Agreement**," the parties agreed "that any dispute, claim, or controversy in any way arising out of or relating to (i) these Terms and prior versions of these Terms, or the existence, breach, termination, enforcement, interpretation, scope, waiver, or validity thereof; (ii) [the plaintiff's] access to or use of the Services at any time … will be settled by binding individual arbitration between [the plaintiff] and Uber, and not in a court of law."  *Id* § 2(a)(1). The arbitration provision also includes separate "[d]elegation clause," which states:

- "Only an arbitrator,  . . . shall have exclusive authority to resolve any dispute arising out of or relating to the interpretation, applicability, enforceability, or formation of this Arbitration Agreement, including without limitation any claim that all or any part of this Arbitration Agreement is void or voidable"; and

- "An arbitrator shall also have exclusive authority to resolve all threshold arbitrability issues, including issues relating to whether these Terms are applicable, unconscionable, or

4

illusory and any defense to arbitration, including without limitation waiver, delay, laches, or estoppel." *Id.* § 2(a)(4).

Arbitrations under the 2023 Terms may "be resolved only in individual arbitration." *Id.* at § 2(a)(2). The parties expressly "waive[d] the right to have any dispute, claim, or controversy brought, heard, administered, resolved, or arbitrated as a class" and expressly "waive[d], the right to seek, recover, or obtain any non-individual relief." *Id.* They agreed that the arbitration provision "evidences a transaction involving interstate commerce." *Id.* § 2(c). They agreed to confer to select an arbitrator pursuant to 9 U.S.C. § 5. *Id.* And they agreed that arbitrations may be conducted in the county where the plaintiff lives. *Id.* § 2(e).

## III. DESPITE HIS REPEATED AGREEMENT TO ARBITRATE, THE PLAINTIFF SUED UBER IN THIS COURT.

Disregarding his thrice contractual commitment to resolve all disputes against Uber via individual arbitration, the plaintiff sued Uber in this Court on behalf of a putative, nationwide class. Am. Compl. ¶ 78. The plaintiff alleges that he is blind, that he relies on a service animal, and that in 2023 certain Drivers using the Uber Driver App refused to provide rides he requested using the Uber Rider App, "upon seeing [him] and/or his service animal." *Id.* The plaintiff admits that Uber has a policy prohibiting Drivers who use the Uber Driver App from refusing service to a Rider accompanied by a service animal. *Id.* ¶ 14. Nevertheless, he asserts claims against Uber, not the Drivers who allegedly refused to provide him rides, under the Americans with Disabilities, the D.C. Human Rights Act, and the D.C. Consumer Protection Procedures Act.

## ARGUMENT

The Federal Arbitration Act, 9 U.S.C. § 1 *et seq.*, makes arbitration agreements "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Congress enacted the Federal Arbitration Act to displace

"widespread judicial hostility to arbitration" with a strong, national "policy favoring arbitration." *AT&T Mobility, LLC v. Concepcion*, 563 U.S. 333, 339 (2011).  To that end, arbitration agreements must be enforced according to their terms, and they must not be invalidated or set aside based on any rule that is hostile to arbitration.  *Id.*; *Kindred Nursing Ctrs. v. Clark*, 581 U.S. 246, 250–55 (2017).  Arbitration agreements must be "generously construed," *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985), and "rigorously enforce[d] … according to their terms," *Am. Exp. Co. v. Italian Colors Rest.*, 570 U.S. 228, 233 (2013) (cleaned up).

Thus, when considering a motion to compel arbitration, courts have a limited role.  *See Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) ("By its terms, the [Federal Arbitration] Act leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed.").  "[B]efore referring a dispute to an arbitrator, the court determines whether a valid arbitration agreement exists." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 69 (2019).  If so, the default rule is that the Court also decides whether the parties' dispute is within that agreement's scope.  *Commc'ns Workers of Am. v. AT&T Inc.*, 6 F.4th 1344, 1347 (D.C. Cir. 2021).   At times, however, such threshold disputes must be arbitrated.  *Rent-A-Center, Inc. v. Jackson*, 561 U.S. 63, 71–72 (2010).  When the parties clearly and unmistakably delegate threshold disputes to an arbitrator, "a court possesses no power to decide" them.  *Henry Schein*, 586 U.S. at 68.  Which is to say, if there is a delegation clause, the Court's inquiry concerns a single question: whether a valid arbitration agreement exists.  If so, the Court "shall" refer the dispute to arbitration and "shall" stay the case until the arbitration has concluded.  9 U.S.C. § 3; *see Smith v. Spizzirri*, 601 U.S. 472, 477–78 (2024) ("Just as 'shall' means 'shall,' 'stay' means 'stay.'").

## I.    A VALID ARBITRATION AGREEMENT BETWEEN THE PARTIES EXISTS.

Whether a valid arbitration agreement exists turns on "ordinary state-law principles that govern the formation of contracts." *First Options, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). Under D.C. law "a contract is formed when there is an offer, an acceptance, and valuable consideration." *Osvatics v. Lyft, Inc.*, 535 F. Supp. 3d 1, 10 (D.D.C. 2021) (Jackson, J.); *accord Eastbanc, Inc. v. Georgetown Park Assocs. II*, 940 A.2d 996, 1004 (D.C. 2008) (a contract is formed when "the parties expressed an intention to be bound, agreed to all material terms, and assumed mutual obligations"). These requirements are met for agreements, often called "clickwrap" agreements, that are formed online when users are "present[ed] the terms of the agreement and require[d] … to click 'I Agree' before they can access the service." *Osvatics*, 535 F. Supp. 3d at 11 (cleaned up).[2] That presentment of terms and manifestation of assent (clicking "I Agree") "constitute[] a valid means of offer and acceptance," and a user's associated promises offered in exchange for access to the services are "adequate consideration." *Id.*; *accord Selden v. Airbnb, Inc.*, 4 F.4th 148 (D.C. Cir. 2021) (contract formed when user clicked "I agree"); *Gambo v. Lyft*, 642 F. Supp. 3d 46, 55 & n.3 (D.D.C. 2022) (same) (collecting cases).

A "contract is no less a contract simply because it is entered into via a computer." *Forrest v. Verizon Commc'ns*, 805 A.2d 1007, 1011 (D.C. 2002). So long as a reasonable person would understand that by taking a particular act he is manifesting his assent to be bound by online terms, a valid contract is formed when he takes that act. *See Apprio, Inc. v. Zaccari*, 104 F.4th 897, 907 (D.C. Cir. 2024) ("[A]s a matter of common sense, Zaccari's 'acknowledgment' is meaningful

---

[2]    "Courts routinely uphold clickwrap agreements for the principal reason that the user has affirmatively assented to the terms of agreement by clicking 'I agree.'" *Meyer v. Uber Techs., Inc.*, 868 F.3d 66 (2d Cir. 2017); *see also Oberstein v. Live Nation Entm't, Inc.*, 60 F.4th 505, 513 (9th Cir. 2023) ("Courts routinely find clickwrap agreements enforceable."); *Hancock v. AT&T Co.*, 701 F.3d 1248, 1256 (10th Cir. 2012) ("Clickwrap agreements are increasingly common and have routinely been upheld.") (cleaned up).

evidence of his intent to be bound in this particular circumstance because clicking a button in this manner is a common method of contractual acceptance in the world of clickwrap software contracts."); *Selden*, 4 F.4h at 157; *accord Fteja v. Facebook, Inc.*, 841 F. Supp. 2d 829, 834–40 (S.D.N.Y. 2012) (website's terms of service were valid agreement where notice provided below "Sign Up" button stated that "[b]y clicking Sign Up, you are indicating that you have read and agree to the Terms of Service," and user clicked the "Sign Up" button); *Crawford v. Beachbody, LLC*, 2014 WL 6606563, at *3 (S.D. Cal. 2014) (notice above "Place Order" button).

Here, on January 30, 2023, the plaintiff was presented with a simple pop-up screen devoted to providing notice of the revised 2023 Terms and obtaining user assent. Ex. C. The screen stated "We've updated our terms," and "We encourage you to read our updated Terms in full," and included a link to the Terms. *Id.* The plaintiff clicked the check box next to the phrase "**By checking the box, I have reviewed and agree to the Terms of Use and acknowledge the Privacy Notice.**" *Id.*; *see* Davis Decl. ¶ 15; Ex. D. The plaintiff then clicked the "Confirm" button that appeared below that statement. Ex. C; *see* Davis Decl. ¶ 15. When he did, he was (and any reasonable app users would have been) on notice that he was manifesting his intent to be bound by the 2023 Terms. The plaintiff further manifested that assent by proceeding to use the Uber Rider App to request rides from Drivers until at least November 2023. Davis. Decl. ¶ 16. A valid agreement to arbitrate was formed and exists between the parties.

## II.    THE PARTIES CLEARLY AND UNMISTAKABLY DELEGATED ARBITRABILITY QUESTIONS TO THE ARBITRATOR.

The Court should refer this matter to arbitration and stay this action without further inquiry because the parties, in the 2023 Terms, clearly and unmistakably delegated questions of arbitrability to the arbitrator. Parties may agree to arbitrate "gateway questions of arbitrability, such as whether the parties have agreed to arbitrate or whether their agreement covers a particular

controversy … so long as the parties' agreement does so by clear and unmistakable evidence." *Henry Schein*, 586 U.S. at 69 (cleaned up).  These gateway questions may concern the *scope* of the agreement and any objections to the *enforceability* of a validly formed agreement.  *See, e.g.*, *Rent-A-Center*, 561 U.S. at 72 (holding party resisting arbitration had to arbitrate claim that agreement was unconscionable because the parties clearly and unmistakably delegated enforceability issues to the arbitrator); *Commc'ns Workers*, 6 F.4th at 1347.

Here, Uber and the plaintiff clearly and unmistakably delegated arbitrability and enforceability questions to the arbitrator.  In the "[d]elegation clause," the parties agreed that "[o]nly an arbitrator shall … have exclusive authority to resolve any dispute arising out of or relating to the interpretation, applicability, enforceability, or formation of this Arbitration Agreement" as well as "all threshold arbitrability issues." Ex. E § 2(a)(4).  This delegation clause is neither silent nor ambiguous.  It expressly and unequivocally delegates "all threshold arbitrability issues" and then some to the arbitrator.  Thus, this case should be referred to arbitration to resolve any such disputes.  And, regardless, the plaintiff's claims plainly relate to his access to and use of the services, so they fall within the arbitration agreement's scope in any event.  *See id.* § 2(a)(1).

## **CONCLUSION**

The Court should enter an order compelling arbitration and staying this action until the arbitration has concluded.

Respectfully submitted,

**MORGAN, LEWIS & BOCKIUS LLP**

Dated:  July 15, 2024

*s/ Stephanie Schuster*
Stephanie Schuster (Bar No. 1011924)
Patrick A. Harvey (Bar No. 995570)
1111 Pennsylvania Avenue, NW
Washington, DC  20004
Telephone: 202.739.3000
stephanie.schuster@morganlewis.com
patrick.harvey@morganlewis.com

*Attorneys for Defendants*

10