UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| LAUREL HILBERT, *Plaintiff*, v. UBER TECHNOLOGIES, INC., *et al.*, *Defendants*. | Civil Action No. 24-00584 (AHA) |

### Memorandum Opinion

Plaintiff Laurel Hilbert brought this action against Defendant Uber Technologies, Inc., and two subsidiaries alleging violations of federal and state law for discriminating against customers who are visually impaired and rely on service animals. Defendants have moved to compel arbitration and stay this action pursuant to the Federal Arbitration Act, 9 U.S.C. § 1 *et seq*. Because the Act and governing precedent mandate arbitration, the Court grants the motion.

**I.    Background**

Uber provides ride-share services to the general public. ECF No. 3 ¶ 34. Defendant Rasier, LLC, is an Uber subsidiary that holds many of the licenses required for Uber's operations. *Id.* ¶ 35. Defendant Drinnen, LLC, is an Uber subsidiary that holds a permit to operate as a digital dispatch company in D.C. *Id.* ¶ 36.

Plaintiff Hilbert is visually impaired and a frequent ride-share consumer. *Id.* ¶¶ 32–33. The operative complaint describes several incidents in which Hilbert was denied an Uber ride due to his use of a service dog. *Id.* ¶¶ 53–69. Hilbert has reported these refusals of service through Uber's

"safety line" but has not received any information concerning the steps the company is taking to remedy this recurring problem. *Id.* ¶¶ 70, 73.

According to a declaration submitted by Defendants, Hilbert created an Uber rider account in November 2018. ECF No. 13-2 ¶ 6. In doing so, he agreed to terms of use that had taken effect in December 2017. *Id.* ¶ 8; *see* ECF No. 13-3. Hilbert later agreed to revised terms of use in November 2022 and in January 2023. ECF No. 13-2 ¶¶ 13, 15; *see* ECF Nos. 13-4, 13-7.

On both occasions, the process for assenting to the terms of use was similar. ECF No. 13-2 ¶ 15. In the Uber app, Hilbert was presented with a "blocking pop-up screen"—meaning a screen that he could not proceed past without taking some action. *Id.* ¶ 12. The pop-up screen stated: "We've updated our terms" and "We encourage you to read our updated Terms in full." *Id.*; *see* ECF No. 13-5. The phrases "Terms of Use" and "Privacy Notice" appeared below that message and were displayed in blue, underlined text to denote hyperlinks. ECF No. 13-2 ¶ 12; *see* ECF No. 13-5. Those hyperlinks directed the user to the terms of use and the privacy notice. ECF No. 13-2 ¶ 12. The pop-up screen also included a checkbox next to this phrase: "By checking the box, I have reviewed and agree to the Terms of Use and acknowledge the Privacy Notice." *Id.* ¶ 13; *see* ECF No. 13-5. Below that phrase was a button labeled "Confirm." ECF No. 13-2 ¶ 13; *see* ECF No. 13-5. Uber riders could not move past the pop-up screen to use the app unless they checked the box and clicked the "Confirm" button. ECF No. 13-2 ¶ 13. Uber's records reflect that Hilbert did that in November 2022 and January 2023. *Id.* ¶¶ 13, 15; *see* ECF No. 13-6.

The terms of use included an arbitration agreement. As relevant here, the 2023 terms of use provide:

> [A]ny dispute, claim, or controversy in any way arising out of or relating to (i) these Terms and prior versions of these Terms, or the existence, breach, termination, enforcement, interpretation, scope, waiver, or validity thereof; [and] (ii) your access to or use of the

> Services at any time . . . will be settled by binding individual arbitration between you and Uber, and not in a court of law.

ECF No. 13-7 § 2(a)(1). The agreement also states:

> Only an arbitrator . . . shall have exclusive authority to resolve any dispute arising out of or relating to the interpretation, applicability, enforceability, or formation of this Arbitration Agreement, including without limitation any claim that all or any part of this Arbitration Agreement is void or voidable. An arbitrator shall also have exclusive authority to resolve all threshold arbitrability issues, including issues relating to whether these Terms are applicable, unconscionable, or illusory and any defense to arbitration, including without limitation waiver, delay, laches, or estoppel.

*Id.* § 2(a)(4).

Hilbert filed this action on February 29, 2024. He seeks to represent a putative class of "all blind or visually disabled individuals who use service animals and who have attempted to access or been deterred from attempting to access or from accessing Uber transportation services in whole or in part because they use a service animal." ECF No. 3 ¶ 78. Hilbert brings claims under the Americans with Disabilities Act, the D.C. Human Rights Act, and the D.C. Consumer Protection Procedures Act. *Id.* ¶¶ 84–137.

Defendants have moved to compel arbitration and to stay these proceedings until arbitration has concluded. ECF No. 13.

## II.     Legal Standard

The Federal Arbitration Act ("FAA") provides that a contractual provision requiring arbitration "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The Supreme Court has instructed that this provision reflects "a liberal federal policy favoring arbitration" and that "courts must place arbitration agreements on an equal footing with other contracts and enforce them according to their terms." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (quotation marks and

3

citation omitted). Moreover, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Wolff v. Westwood Mgmt., LLC*, 558 F.3d 517, 520 (D.C. Cir. 2009) (quoting *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983)). "When a district court finds that a lawsuit involves an arbitrable dispute, and a party requests a stay pending arbitration, § 3 of the FAA compels the court to stay the proceeding." *Smith v. Spizzirri*, 601 U.S. 472, 478 (2024).

The Court evaluates a motion to compel arbitration "as if it were a request for summary disposition of the issue of whether or not there had been a meeting of the minds on the agreement to arbitrate." *Gambo v. Lyft, Inc.*, 642 F. Supp. 3d 46, 52 (D.D.C. 2022) (quoting *Aliron Int'l, Inc. v. Cherokee Nation Indus., Inc.*, 531 F.3d 863, 865 (D.C. Cir. 2008)). "Because the party seeking to enforce an arbitration agreement bears the burden of proving that the other party agreed to arbitrate, the party seeking to compel arbitration must first present evidence sufficient to demonstrate an enforceable agreement to arbitrate." *Id.* (quoting *Osvatics v. Lyft, Inc.*, 535 F. Supp. 3d 1, 9 (D.D.C. 2021)). "The burden then shifts to the non-moving party to raise a genuine issue of material fact as to the making of the agreement, using evidence comparable to that identified in Rule 56." *Id.* (quoting *Osvatics*, 535 F. Supp. 3d at 9). "The court must grant summary judgment with respect to the formation of an arbitration agreement if the pleadings and evidence show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Id.* (quoting *Osvatics*, 535 F. Supp. 3d at 9). "But if the Court concludes that a 'genuine dispute of material fact exists as to the making of the arbitration agreement, including whether the parties assented to the agreement,' the case must 'proceed summarily to trial solely on the issue of arbitrability.'" *Id.* (quoting *Jin v. Parsons Corp.*, 966 F.3d 821, 827 (D.C. Cir. 2020)).

**III.     Discussion**

Hilbert does not dispute that he checked the box indicating his review of and agreement to the contract containing the arbitration clause, and that he further clicked "Confirm." He argues that the arbitration clause should not be enforced because Defendants cannot show that he would have received sufficient notice as a visually impaired user. Hilbert further argues that, even if the notice was adequate, any agreement to arbitrate was rendered illusory by Uber's ability to unilaterally modify the agreement. Under governing precedent, neither argument prevails.

**A.  The Parties Formed An Agreement To Arbitrate**

"Because arbitration is a contractual matter, [the Court] must first determine whether the parties have agreed to arbitrate by looking to state contract law." *Selden v. Airbnb, Inc.*, 4 F.4th 148, 156 (D.C. Cir. 2021). The parties agree that D.C. law governs the inquiry. ECF No. 13 at 7; ECF No. 15 at 8. And under D.C. law, "[a] contract is formed when there is an offer, an acceptance, and valuable consideration exchanged between the parties." *Osvatics*, 535 F. Supp. 3d at 10 (alteration in original) (quotation marks and citation omitted). The parties must "express[] an intent to be bound, agree[] to all material terms, and assume[] mutual obligations sufficient to create an enforceable contract." *Id.* (alterations in original) (citation omitted).

Defendants have met their initial burden to show that the elements of contract formation were satisfied with respect to the arbitration provision. *See id.* at 10–11 (holding that defendant satisfied initial burden where plaintiff agreed to terms of service in exchange for access to Lyft application). Hilbert has not satisfied his burden to show a genuine dispute of material fact as to the formation of the arbitration agreement. He does not deny that he checked the box and clicked "Confirm" on the pop-up screen. Instead, Hilbert maintains that because he relies on VoiceOver, a screen reading technology, "in all likelihood Uber's app failed to make him aware of its terms of use and to make him aware of the effect of clicking on any box or button that he clicked." ECF

No. 15 at 11. He suggests that he would have been informed only of the existence of a "box" or "button" and that he simply clicked it to move to the next screen. *Id.* at 12.

Defendants have rebutted these assertions in a declaration affirming that VoiceOver would have read aloud the relevant information on the pop-up screen. ECF No. 17-1. Specifically, it would have read aloud: "We've updated our terms" and "We encourage you to read our updated Terms in full." *Id.* ¶ 8. It also would have read aloud the "Terms of Use" and "Privacy Notice" hyperlinks, and it would have read aloud the phrase, "By checking the box, I have reviewed and agree to the Terms of Use and acknowledge the Privacy Notice." *Id.* ¶¶ 8–9. Finally, it would have read aloud the "Confirm" button. *Id.* ¶ 9. Defendants have further submitted video evidence of VoiceOver operating in this fashion. *See* ECF No. 17-2. Hilbert has not rebutted this evidence.

Hilbert contests that he received actual notice, saying he has no recollection of hearing this information read aloud, and challenges whether the "Terms of Use" hyperlink would have been sufficiently conspicuous even for a user who was not visually impaired. ECF No. 15 at 14–16; *see* ECF No. 15-1 ¶ 12. Under D.C. law, however, it is sufficient for Defendants to show inquiry notice. *See Gambo*, 642 F. Supp. 3d at 55 ("[A]bsent fraud or mistake, one who signs a contract is bound by a contract which he has an opportunity to read whether he does so or not." (quoting *Forrest v. Verizon Commc'ns, Inc.*, 805 A.2d 1007, 1010 (D.C. 2002))). And courts have upheld arbitration agreements in circumstances comparable to those here. *See, e.g.*, *Walker v. Uber Techs., Inc.*, --- F. Supp. 3d ---, ---, No. 23-cv-3796, 2024 WL 4553987, at *5 (D.D.C. Sept. 11, 2024) (enforcing agreement based on same pop-up screen), *appeal filed*, No. 24-7154 (D.C. Cir. Oct. 11, 2024); *Good v. Uber Techs., Inc.*, 234 N.E.3d 262, 277–83 (Mass. 2024) (same); *see also, e.g.*, *Selden*, 4 F.4th at 156–57 (enforcing agreement where terms and policies appeared in red text and were hyperlinked to the full policies, and the notice was "clearly legible, appropriately sized, and

unobscured by other visual elements" (citation omitted)); *Gambo*, 642 F. Supp. 3d at 55 (finding even clearer evidence of assent than in *Selden* because the user was required to click a box next to the phrase, "I understand and agree to Lyft's Terms of Service and Privacy Policy"). This includes circumstances where plaintiffs with visual impairment were provided notice and the opportunity to access the terms of an arbitration agreement. *See Roberts v. Uber Techs., Inc.*, No. 23-CV-00545, 2023 WL 11833598, at *2–3 (W.D. Tex. Aug. 8, 2023) (rejecting plaintiff's argument that, because he was blind, he did not have reasonable notice of clickwrap arbitration agreement); *cf. Saizhang Guan v. Uber Techs., Inc.*, 236 F. Supp. 3d 711, 725 (E.D.N.Y. 2017) ("[E]ven when the failure to read the contract is attributable to the party's inability to read or understand the language in which the contract is written, the party is still bound by his or her assent."); *Pyles v. HSBC Bank USA, N.A.*, 172 A.3d 903, 907 (D.C. 2017) ("While appellant may have chosen to sign the contracts as she was going off to work, no allegation is made that she had no other choice than to sign at that point. Her signature on the documents must constitute assent unless it was obtained by fraud.").[1]

### B. Whether The Agreement Is Illusory Is A Question For The Arbitrator

Hilbert also argues that, even if he agreed to the contract containing the arbitration clause, any such agreement is invalid because Uber retained the right to unilaterally modify the contract, rendering it illusory. ECF No. 15 at 19–20. Hilbert cites a provision in the terms of use that allows Uber to "modify these Terms or its policies relating to the Services at any time, effective upon posting of an updated version of these Terms through the Services or Uber's website." ECF No.

---

[1] The present case differs from one in which a defendant attempts to enforce an arbitration clause that the plaintiff was never informed of and "had no way of accessing," defeating any actual or constructive notice. *See Nat'l Fed'n of the Blind v. The Container Store, Inc.*, 904 F.3d 70, 83–84 (1st Cir. 2018) (declining to enforce an arbitration clause where there was "'zero hint' that terms and conditions (specifically, an arbitration agreement) applied to the in-store-plaintiffs' enrollment in the loyalty program").

13-7 § 1. Because there are no limitations on Uber's ability to modify terms, Hilbert argues, the agreement to arbitrate is illusory. ECF No. 15 at 20. According to Hilbert, the Court should adjudicate the question of whether the arbitration clause is illusory and find it so.

This argument is foreclosed by precedent. The Supreme Court has held that the FAA "allows parties to agree by contract that an arbitrator, rather than a court, will resolve threshold arbitrability questions as well as underlying merits disputes." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 65 (2019). Moreover, "[w]hen the parties' contract delegates the arbitrability question to an arbitrator, a court may not override the contract." *Id.* at 68. "In those circumstances, a court possesses no power to decide the arbitrability issue." *Id.* Here, it is undisputed that the agreement provides that the arbitrator "shall . . . have exclusive authority to resolve all threshold arbitrability issues, including issues relating to whether these Terms are applicable, unconscionable, or illusory." ECF No. 13-7 § 2(a)(4). Accordingly, any argument that the agreement's terms are illusory must be resolved by the arbitrator. *See also Walker*, --- F. Supp. 3d at ---, 2024 WL 4553987, at *5 (holding that question whether arbitration agreement was unconscionable had to be resolved by arbitrator rather than court).[2]

**IV.   Conclusion**

For the foregoing reasons, Defendants' motion to compel arbitration and stay these proceedings is granted. This action is stayed pending the completion of arbitration. The parties are directed to file a joint status report advising the Court of the status of arbitration within 90 days of this opinion and every 90 days thereafter.

A separate order consistent with this decision accompanies this memorandum opinion.

---

[2] The Court need not reach Defendants' alternative argument that the agreement is not illusory because Uber had the power to make only prospective, rather than retroactive, modifications. ECF No. 17 at 6.

_____
AMIR H. ALI
United States District Judge

Date:   January 7, 2025